IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETTIE R. COLEMAN WYNNE, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 14-2081 |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

**MARILYN HEFFLEY, U.S.M.J.**                                              **May 29, 2015**

Bettie R. Coleman Wynne ("Plaintiff"), pursuant to 42 U.S.C. § 405(g), seeks review of the Commissioner of Social Security's ("Commissioner" or "Defendant") decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the reasons that follow, I recommend that Plaintiff's Request for Review be granted in part and the matter be remanded for further review consistent with this Report and Recommendation.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was born on January 5, 1950. R. at 165, 187.[1] She has a college degree and was employed as a social worker from 1991 until 2008. R. at 42, 192. Plaintiff alleges that she became unable to work on January 1, 2009 due to a slipped disc in her back. R. at 186-87.

---

[1] Citations to the administrative record will be indicated by "R." followed by the page number.

Plaintiff protectively filed an application for DIB under Title II of the Act on July 19, 2010.  R. at 187.  The application was denied initially on April 26, 2011.  R. at 24, 86-90.  Plaintiff then filed a timely request for a hearing.  R. at 91-92.  On August 9, 2012, a hearing was held before an Administrative Law Judge ("ALJ").  R. at 36-66.  By decision dated September 14, 2012, the ALJ found that Plaintiff was not disabled.  R. at 21-31.  Plaintiff filed a timely appeal with the Appeals Council, which denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner.  R. at 1-5, 14, 229-36.  Plaintiff then commenced this action in federal court.  Pl.'s Compl. (Doc. No. 3).

II. **LEGAL STANDARD**

The role of the court in reviewing an administrative decision denying benefits in a social security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence."  42 U.S.C. § 405(g); Richard v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence.  Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

"Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v.

Underwood, 487 U.S. 552, 564-65 (1988)). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 423(d)(1). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

### III. THE ALJ'S DECISION

In her decision, the ALJ first determined that Plaintiff met the insured status requirements of the Act through December 31, 2014. R. at 27. Using the above-referenced five-step sequential analysis, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2009. Id. At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: back disorders; osteoarthritis; and hypertension. Id. The ALJ did not, however, find that any impairment, or combination of impairments, met or medically equaled a listed impairment at step three of the

3

analysis. R. at 28. At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work. R. at 29. The ALJ concluded that Plaintiff was capable of performing her past relevant work as a caseworker—as that job is generally performed in the national economy—and consequently, she was not disabled. R. at 31.

IV. **PLAINTIFF'S REQUEST FOR REVIEW**

In her Request for Review, Plaintiff argues that she should have been deemed disabled because the ALJ's finding that she could return to her past relevant work as a caseworker is not supported by substantial evidence. Pl.'s Br. (Doc. No. 8) at 4. She also maintains that the ALJ erred by failing to include a sit-stand option in her RFC. Id. at 6.

V. **DISCUSSION**

    A. **The Record in this Case Contains Insufficient Information to Determine Whether Plaintiff Can Return to Her Past Relevant Work**

Plaintiff challenges the ALJ's finding at step four of the sequential analysis, namely that she can return to her past employment as a caseworker. Specifically, she alleges that because the Vocational Expert ("VE") erred by referencing the incorrect job description from the Dictionary of Occupational Titles ("DOT"), the ALJ's decision is not supported by substantial evidence.[2]

Social Security Ruling 82-62 outlines the evidence which the ALJ should consider when making a determination regarding Plaintiff's past relevant work at step four of the analysis as follows:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the

---

[2] The DOT is a United States Department of Labor publication which contains descriptions for thousands of jobs in the national economy. Martin v. Barnhart, 240 Fed. App'x 941, 943 (3d Cir. 2007).

> skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy. The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

Social Security Ruling 82-62. While testimony from a VE may be considered, it is not required at step four of the sequential analysis. Lopez v. Comm'r of Soc. Sec., 270 Fed. App'x 119, 123 (3d Cir. 2008)

Based upon my review of the hearing testimony and the ALJ's opinion, it is clear that the ALJ relied upon the VE's limited expert testimony in this case. Following Plaintiff's testimony at the hearing, the ALJ requested that the VE summarize Plaintiff's vocational profile. R. at 59. Before classifying Plaintiff's prior work, the VE asked Plaintiff to provide more information regarding her prior employment as a caseworker. One of the questions the VE posed was whether Plaintiff worked for a government agency, in response to which Plaintiff stated that she worked for Jewish Family and Child Welfare, an agency of the Department of Human Services. R. at 59-60. The VE then testified that the industry designation for Plaintiff's past relevant work was government services and identified DOT code 169.262-010. The VE stated that the job was skilled with a sedentary physical demand, but that based upon Plaintiff's description of her job, she was performing it as light work, mainly as a result of the amount of standing and walking she engaged in. R. at 59-60.

The ALJ never posed a hypothetical question to the VE and did not elicit any further testimony from him. Instead, at step four, the ALJ concluded that based upon her finding that Plaintiff retained a RFC of a full range of sedentary work, she could return to her past employment as that job is generally performed in the national economy, which according to the VE was also sedentary.

In the instant matter, Plaintiff argues that the VE's identification of Plaintiff's work as a government caseworker was incorrect and accordingly, the ALJ's decision is not supported by substantial evidence. In support of this contention, Plaintiff references two DOT sections containing job descriptions that she alleges are more comparable to her past relevant work. Plaintiff listed her past relevant work as a social worker in public service and described her job responsibilities as assisting families with their domestic, medical and financial needs; completing forms; visiting families on site; and in-office appointments. R. at 192. The DOT job description, which was referenced by the VE, occupational code 169.262-010 "Caseworker," has an industry designation of government services and is described as follows:

> Performs research into laws of the United States and procedures of federal agencies and prepares correspondence in office of Member of Congress to resolve problems or complaints of constituents: Confers with individuals who have requested assistance to determine nature and extent of problems. Analyzes U.S. code to become familiar with laws relating to specific complaints of constituents. Researches procedures and systems of governmental agencies and contacts representatives of federal agencies to obtain information on policies. Contacts Congressional Research Service to collect information relating to agency policies and laws. Contacts colleges and universities to obtain information relating to constituent problems. Determines action to facilitate resolution of constituent problems. Composes and types letters to Federal agencies and Congressional Committees concerning resolution of problems of constituents. Prepares memoranda to inform Member of Congress of problems which require legislative attention. Confers with personnel assisting Member of Congress to discuss introduction of legislation to solve constituent problems. Calculates social security benefits, veterans' benefits, tax assessments, and other data concerning constituent complaints, using desk calculator.

DOT 169.262-010 (4th Ed., Rev. 1991).

Here, the Commissioner agrees with Plaintiff and concedes that "occupational code 169.262-010 describes tasks related to working on congressional and other federal matters, which, based on the record, Plaintiff's past relevant work as a caseworker did not entail." Comm'r's Resp. (Doc. No. 9) at 5. The Commissioner argues, however, that although the VE cited the incorrect DOT code, there is no reason to overturn the ALJ's decision at step four. I disagree and find that the case must be remanded for further review consistent with this Report and Recommendation.

At step four of the sequential analysis, the Commissioner must determine whether the Plaintiff can return to her past relevant work considering her impairment and her RFC. Plaintiff, not the Commissioner, has the burden of proof at this step. See Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2003) ("The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five."). As previously mentioned, the use of experts is not required at step four, but is within the ALJ's discretion. Lopez, 270 Fed. App'x at 123 (upholding the ALJ's reliance on the DOT to determine that Plaintiff's former work was light work); see also 20 C.F.R. § 404.1560(b)(2).

In this case, the ALJ did not refer to the VE's testimony anywhere in her decision. However, it is evident that her conclusion was based upon his testimony. Rather than concluding that Plaintiff could continue to perform her job based upon a comparison of her RFC to her description of her job functions, the ALJ found that Plaintiff could perform the job as it is generally performed. The ALJ did not cite to or reference the DOT, the VE's testimony or any other source in reaching this conclusion. In fact, the only evidence of record describing how the

job of a caseworker is generally performed is the VE's testimony, which is based upon an incorrect occupational code.

The Commissioner counters and argues that that this error is harmless and does not change the outcome of the case because "even Plaintiff acknowledges that her past relevant work corresponded to another DOT title that matched the exertional level identified by the VE and Plaintiff's RFC." Comm'r's Resp. at 3. The Commissioner refers to DOT 195.107-010, entitled "Caseworker," with an industry designation of social services, which provides as follows:

> Counsels and aids individuals and families requiring assistance of social service agency; Interviews clients with problems, such as personal and family adjustments, finances, employment, food, clothing, housing, and physical and mental impairments to determine nature and degree of problem. Secures information, such as medical, psychological, and social factors contributing to client's situation, and evaluates these and client's capacities. Counsels client individually, in family, or in small groups regarding plans for meeting needs, and aids client to mobilize inner capacities and environmental resources to improve social functioning. Helps client to modify attitudes and patterns of behavior by increasing understanding of self, personal problems, and client's part in creating them. Refers clients to community resources and other organizations. Compiles records and prepares reports. Reviews service plan and performs follow-up to determine quantity and quality of service provided client and status of client's case. Accesses and records client and community resource information, manually or using computer equipped with keyboard, to input and retrieve information. May secure supplementary information, such as employment, medical records, or school reports. May specialize in providing, monitoring, and evaluating services provided to older adults. May determine client's eligibility for financial assistance. May work in collaboration with other professional disciplines. May be required to visit clients in their homes or in institutions. Usually required to have knowledge and skill in case work method acquired through degree program at school of social work. May be required to possess state license or certificate. When rendering advisory services to agencies, groups, or individuals, may be designated Social-Work Consultant, Casework (social ser.). May aid parents with child rearing problems and children and youth with difficulties in social adjustments (Caseworker, Child Welfare (social ser.) 195.107-014).

DOT 195.107-010 (4th Ed., Rev. 1991). The DOT classifies this position as sedentary and skilled.

While Plaintiff acknowledges that this occupational listing is closer in description to her

8

prior work than the DOT code cited by the VE, she argues that DOT 195.107-014, entitled "Caseworker, Child Welfare," which is classified as light work, more accurately corresponds to her past relevant work and should be applicable.[3] Plaintiff contends that "given [her] description of how she performed the caseworker position, which involved extensive standing and walking is more probable that her job duties matched those listed at DOT #195.107-014."[4] Pl.'s Br. at 6.

---

[3] The following job description is set forth in DOT 195.107-014:

> Aids parents with child rearing problems and children and youth with difficulties in social adjustments; Investigates home conditions to protect children from harmful environment. Evaluates children's physical and psychological makeup to determine needs. Refers child and parent or guardian to community resources according to needs of child. Evaluates foster home environmental factors and personal characteristics of adoption applicants to determine suitability of foster home and adoption applicants. Places and is responsible for children and their well-being in foster or adoptive homes, institutions, and medical treatment centers. Counsels children and parents, guardians, foster parents, or institution staff, concerning adjustment to foster home situation, plans for child's care, interactional behavior modifications needed, or rehabilitation. Places children in adoptive homes and counsels adoptive parents pending legal adoption. Provides services to unmarried parents, including care during pregnancy and planning for a child. Arranges for daycare or homemaker service. Employed in establishments such as child placement (foster care or adoption), protective service, or institution. Maintains case history records and reports. Usually required to have knowledge and skill in casework methods acquired through degree program at school of social work. May specialize in specific area of child-directed casework and be designated according to work performed as Caseworker, Child Placement (social ser.); Caseworker, Protective Services (social ser.). May interview clients for purpose of screening to determine eligibility for agency services and be designated Caseworker, Intake (social ser.).

DOT 195.107-014 (4th Ed., Rev. 1991).

[4] Plaintiff does not argue that DOT 195.107-014 is more appropriate because her past work was primarily with children, but instead maintains that it is more applicable because it is performed at a light exertional level.

The record in this case includes several descriptions of Plaintiff's past work. For instance, Plaintiff described her "duties performed" on her application as "home assessment of needy famil[ies] in need of community services, school, medical, food, income budgeting and housing needs." R. at 227. In the work history report, Plaintiff was listed as a social worker in public service with responsibilities described as assisting families with their domestic, medical, and financial needs, completing forms, visiting families on-site, and in-office appointments. R. at 198. The record also contains a form on which a Social Security Administration employee indicated that she had called Plaintiff to further clarify her job duties and noted:

> Claimant stated that her job was in Child Welfare casework. Her workday was spent primarily in the field making home visits to families, driving families to clinic appointments, visiting schools. She estimates that 20-30% of her time was spent in the office doing case documentation and making phone calls. As a lead worker her job was to take new workers into the field with her as she did her work, as part of their training.

R. at 204.

While, I agree that the description of caseworker in DOT 195.107-010 includes some of the responsibilities described by Plaintiff, the question remains as to which of the two occupational codes referenced by Plaintiff is actually closest to her past relevant work. Furthermore, it is evident that the ALJ did not rely upon either of these two occupational titles. Given that the ALJ clearly relied upon the VE's testimony referencing an inapplicable DOT code, her decision is not supported by substantial evidence. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 124 (3d Cir. 2000) (finding that on appeal, the Commissioner may not attempt to substitute reliance on an alternate DOT description not relied upon by the ALJ or "recharacterize" the claimant's past relevant work in an effort to support the ALJ's decision).

For the reasons indicated above, this Court finds that the record in this case does not contain sufficient information to support a determination regarding Plaintiff's ability to continue

to perform her past relevant work. See Social Security Ruling 82-62 (providing that any case requiring consideration of past relevant work must contain sufficient documentation and enough information on past work to permit a decision as to the individual's ability to return to such past work). Accordingly, this matter should be remanded for the limited purpose of allowing the ALJ to decide which DOT occupational code most accurately matches Plaintiff's past relevant work and to determine whether given her RFC, she can perform that job either as she previously did or as it is generally performed in the national economy. Then, only if necessary, the ALJ should proceed to step five of the sequential analysis to determine whether given Plaintiff's RFC, there are other jobs which exist in significant numbers in the national economy that Plaintiff is able to perform.

### B. The ALJ Did Not Err in Finding that a Sit-Stand Option Was Not Required as Part of Plaintiff's RFC

Next, Plaintiff argues that the ALJ erred by failing to impose a sit-stand option as part of her RFC. She contends that the ALJ's decision is not supported by substantial evidence because the medical evidence conclusively demonstrates that she requires a sit-stand option. Pl.'s Br. at 6. For the reasons that follow, this Court finds that Plaintiff's contention lacks merit.

Generally, "'residual functional capacity' [RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (quoting Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999)). A claimant's RFC represents the most—not the least—a person can do. See Cooper v. Barnhart, No. 06–2370, 2008 WL 2433194, at *2 n.4 (E.D. Pa. June 12, 2008) (citing 20 C.F.R. § 416.945(a)). In determining a claimant's RFC, an ALJ must consider all evidence of record and the claimant's subjective complaints and statements concerning his or her limitations. 20 C.F.R. §§ 416.945(a) and 416.920. A review of the evidence of record need not be

exhaustive, but should "be accompanied by a clear and satisfactory explanation of the basis on which it rests." Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001); Cotter v. Harris, 642 F.2d 700, 704–05 (3d Cir. 1981).

Further, an ALJ is empowered to evaluate a claimant's credibility. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). Even if an ALJ concludes that a medical impairment exists which could reasonably cause the symptoms alleged, he or she must evaluate the intensity and persistence of the symptoms and the extent to which they affect the claimant's ability to work. 20 C.F.R. §§ 404.1529(b) and (c); Hartranft, 181 F.3d at 362. In conducting this evaluation, an ALJ may consider such factors as the internal consistency of the claimant's own statements, the medical evidence, and the claimant's medical treatment history. 20 C.F.R. § 404.1529(a). Although an ALJ is required to consider and weigh subjective complaints of pain, the complaints of pain must be consistent with objective medical evidence. Burnett, 220 F.3d at 122.

In the case at bar, the ALJ found that Plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms were not fully credible. The ALJ properly considered Plaintiff's reports of her daily activities as follows:

> At the hearing, as well as in her function reports, the claimant described daily activities that far exceed a level of activity one would expect of a disabled individual. In addition to living alone, handling her finances, and performing household chores, she works part-time as a companion and cooks meals, performs household chores, does laundry, runs errands for that individual as well. She drives, takes public transportation, and tries to leave her home daily. As if those activities are not enough, she attends school for gerontology two nights per week for three to four hours, and studies ministry work two to three times per week for several hours. Additionally, an orthopedist's report shows the claimant is able to do normal activities and has not been taking any medications.

R. at 30.

In evaluating the extent of Plaintiff's subjective complaints, the ALJ also considered additional factors, including that Plaintiff stopped working as a result of a layoff and not because of her medical condition; there had been no significant deterioration in her condition since that time; she performed her job adequately at the time of her layoff despite her condition; she collected unemployment benefits through July 2010, certifying that she was ready, willing and able to work; she testified that she sought out work in her field that involved more sitting while she was receiving unemployment benefits; and she worked as a part-time companion since July 2011. Id.

In addition, the ALJ properly evaluated the objective medical evidence that comprised the record in this case. She acknowledged that the imaging studies, including an x-ray and a magnetic resonance imaging ("MRI"), of Plaintiff's lumbar spine revealed "degenerative disc disease with Grade 1 spondylolisthesis of L4 and L5 and some foraminal narrowing." R. at 319-20. The ALJ reviewed the medical records of Dr. Robert Liebenberg. Dr. Liebenberg determined that Plaintiff's MRI "really did not look extremely bad, but it [was] clear that the findings [were] causing her symptoms." R. at 319. In January of 2012, Dr. Liebenberg concluded that conservative treatment was in order and referred Plaintiff to physical therapy, noting that she was interested in pain management and had received injections 10 years earlier, which she found very helpful. R. at 321.

The ALJ also reviewed the medical records of Dr. Deepak Mehrotra. Plaintiff was examined by Dr. Mehrotra in May of 2012, at which time she complained of increased pain with stair climbing. R. at 324. Plaintiff reported that about 12 years earlier, she received injections, which resolved her low back and right lower extremity pain. Id. She told Dr. Mehrotra that she

wanted to proceed with injections. R. at 325. On July 26, 2012, Plaintiff received a spinal epidural injection administered by Dr. Mehrotra. R. at 342.

Based upon her review of the medical records, the ALJ concluded that the imaging studies revealed mild findings, most of Plaintiff's treatment was by her primary care physician, and the treatment she received was routine and conservative. R. at 30. The ALJ also determined that Plaintiff received a referral to an orthopedist in December 2010, but did not consult with the specialist until early 2012, which suggested that her symptoms were not as severe as she alleged and that Plaintiff "finally saw the orthopedist in order to generate additional medical evidence to support her appeal." Id. Further, the ALJ stated that the orthopedist only recommended conservative treatment, namely physical therapy, and that Plaintiff had one injection in July 2012, which was effective. Id. Finally, the ALJ noted that prior to July of 2012, Plaintiff took only Advil for pain.[5] Id.

In support of her contention that the ALJ should have imposed a sit-stand option as part of her RFC, Plaintiff points to a consultative examination performed by Dr. Harvey Azarva on January 31, 2011 during which he "observed that Plaintiff stated that she can sit for 1 hour before becoming uncomfortable and must change position." Pl.'s Br. at 7; R. at 273. However, Dr. Azarva did not impose any restriction on her ability to sit. He merely noted Plaintiff's subjective complaints in his report. Furthermore, Dr. Azarva's report indicates that Plaintiff stated she was able to work out on exercise machines for up to one-half hour, walk for two to three blocks and stand for one hour; was not using a cane; and was able to operate an automobile. R. at 273-74.

---

[5] Plaintiff testified that she was given a prescription for Naproxen, but did not take it regularly. At the time of the hearing she was taking Naproxen and over-the-counter Advil, which she reported provided relief. R. at 58-59.

14

None of the medical examiners imposed any restrictions regarding Plaintiff's need for a sit-stand option. Rather, the only references to a need to change positions after sitting are notations of Plaintiff's own subjective reports to the examiners. The ALJ indicated that no treating or examining source opined that Plaintiff was more limited than the RFC. R. at 30. Moreover, the ALJ gave Plaintiff the benefit of doubt by restricting her to sedentary work. The ALJ gave little weight to the opinion of Dr. Waldron, the state agency reviewing physician, who found that Plaintiff was able to perform a range of medium work, and determined that the evidence submitted at the hearing showed that Plaintiff was more limited. Id.

Even according to Plaintiff's own testimony, she was able to sit for about one hour and then she would simply need to stretch. Id. When asked why she could no longer work, Plaintiff testified that she could not sit very long and getting in and out of the car all day and constantly climbing stairs were cumbersome to her. R. at 46. However, Plaintiff testified that after she was laid off, she actually looked for work in her field that involved more sitting. R. at 43.

As the ALJ noted, at the time of the hearing, Plaintiff confirmed by her own testimony that she was leading a very active life. She could walk up to about four blocks. R. at 48. Plaintiff attended three to four hour classes twice a week and studied ministry for about an hour and a half approximately three times a week.[6] R. at 50. She cooked for herself about twice a week, was able to care for herself, did her own shopping and dishes, and left her house every day to run errands or visit friends. R. at 51. Plaintiff testified that she had taken vacations, including a cruise, and had

---

[6] Notably, when asked if she had any issues attending her classes, which were in a classroom setting, Plaintiff only identified a difficulty in climbing steep steps which bothered her back. R. 56. She did not mention experiencing any difficulties in sitting through the classes or needing to change positions.

driven to Baltimore. R. at 53-54. Also, in addition to caring for herself and attending school, she was working 10 hours a week as a companion. Her companion responsibilities included ensuring her employer did not fall and cooking, doing laundry, changing linens and running errands for her employer. R. at 44, 51. Finally, Plaintiff testified that she occasionally cooked for her brother who resided in a separate residence. R. at 52.

Based upon the record, this Court finds that it was entirely appropriate for the ALJ to make a credibility determination as to Plaintiff's subjective statements regarding a need for a sit-stand option. The ALJ properly considered her ability to perform activities of daily living, the internal inconsistencies of Plaintiff's own statements, the medical evidence, and her conservative medical treatment history. See 20 C.F.R. § 404.1529(a). Since the ALJ reviewed the record and adequately explained her rejection of the severity of Plaintiff's subjective complaints, the ALJ did not err by failing to impose a sit-stand option in Plaintiff's RFC.

## VI. CONCLUSION

For the foregoing reasons, I make the following:

**RECOMMENDATION**

AND NOW, this 29th day of May, 2015, IT IS RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be GRANTED IN PART and the matter be REMANDED to the Commissioner for the limited purpose of allowing the ALJ to determine which occupational code most accurately matches Plaintiff's past relevant work and whether given her RFC, Plaintiff can perform that job either as she previously did or as it is generally performed in the national economy. Then, only if necessary, the ALJ should proceed to step five of the sequential analysis to determine whether in light of Plaintiff's RFC, there are other jobs in the national economy of significant number which Plaintiff can perform.

/s/ Marilyn Heffley
_____
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE